MONROE, Judge.
Mead Coated Board, Inc., sued the Department of Revenue of the State of Alabama seeking a refund of tax, penalty, and interest paid for the franchise tax years 1988 through 1991. MCBI filed a motion for summary judgment, which identified three issues in dispute. Two of those issues have been resolved; the trial court entered a summary judgment on one issue, from which neither party appeals, and the parties entered into a stipulation that resolved the second issue. The third issue was whether a lease between MCBI and the Industrial Development Board of the City of Phenix City, Alabama, constitutes “capital” within the meaning of § 40-14-41(b)(3), Ala.Code 1975, for purposes of Alabama’s franchise tax on foreign corporations. After hearing arguments from the parties, the trial court held that, in this ease, the lease was capital and entered a summary judgment in favor of the Revenue Department on that issue and denied MCBI’s motion for a summary judgment. MCBI appeals.
To enter a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The facts are undisputed. In 1987, Georgia Kraft Company owned a coated paperboard facility near Phenix City. Georgia Kraft was owned by Mead Corporation and Temple-Inland, Inc. Mead and Temple-Inland agreed to a division of Georgia Kraft’s assets so that on January 1,1988, a new, wholly owned subsidiary now known as MCBI was formed for the purpose of acquiring the Phenix City mill and certain other assets.
Mead and MCBI intended to expand the Phenix City mill by adding an additional paper machine. To accomplish the expansion, Mead entered into an inducement agreement with the Phenix City Industrial Development Board in which the board agreed to issue bonds to finance construction of the new mill. As the board issued the bonds, MCBI purchased them with capital contributed by its parent, Mead. The board used the proceeds from the bonds, totalling $544,347,073, to construct the new paper machine, then leased the paper machine to MCBI pursuant to a December 1,1988, lease agreement. Under the terms of the lease, MCBI, as the tenant, paid a sufficient amount of rent to the board for the board to pay principal and interest on the bonds.
In the stipulation of facts entered by the parties, the parties agreed that,
“[f]or MCBI’s financial reporting purposes, the Lease obligation as a liability and the Bonds as an asset were ignored because the two items offset each other. Thus, on MCBI’s books, the assets listed were the plant and equipment that had been constructed with the Bond proceeds. The capital contributed by Mead was listed in the capital section of the balance sheet. MCBI filed its franchise tax return with the State of Alabama consistent with its books and in accordance with Generally Accepted Accounting Principles (‘GAAP’) as it relates to the Lease and thus did not include in capital employed any amount with respect to the Lease, but did include the capital contributed by Mead as capital employed. MCBI deducted the Bonds on its franchise tax return, even though the Bonds were not reported on MCBI’s books and were not required to be on MCBI’s books in accordance with GAAP.”
Dale Gilliam, the manager of state and local taxes for Mead and a certified public accountant, said that in his opinion MCBI’s treatment of the bonds and lease was in accordance with GAAP. Gilliam also testified regarding independent auditor’s reports done by Deloitte & Touche for the years at issue and including the financial statements of MCBI and its treatment of the bonds and leases. In each of those reports, the auditor determined that the financial statements conformed to generally accepted accounting principles.
Henry McPherson, a former managing partner of Price Waterhouse and a certified public accountant for 36 years, said that in his opinion the lease is not a liability of MCBI under GAAP.
*12 Richard Umstead, a hearing officer for the franchise tax portion of the Corporate Tax Division of the Revenue Department, said that he believes that, in conformity with GAAP, MCBI was not required to show the lease on the balance sheet. However, Um-stead does believe that the lease is a capital lease to be considered a liability under GAAP.
MCBI contends that the trial court erred in its legal conclusion that the lease between MCBI and the industrial development board constitutes “capital” within the meaning of § 40-14-41(b)(3), Ala.Code 1975. We note that there is no presumption of correctness for legal conclusions of the trial court. Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765 (Ala.1996).
The State of Alabama levies a franchise tax on foreign corporations based upon their capital employed in the state. § 40-14-41(a), Ala.Code 1975. For purposes of determining the franchise tax, “capital” is defined as:
“(b) Definition of capital. — The total capital of such foreign corporation, herein referred to as the ‘taxpayer,’ shall equal the aggregate net amount of the following items determined in accordance with Generally Accepted Accounting Principles appropriate in the particular case, as promulgated by the Financial Accounting Standards Board or a similar or successor agency or board, unless otherwise defined in this article:
[[Image here]]
[[Image here]]
“(3) The amount of bonds, notes, debentures, or other evidences of indebtedness maturing and payable more than one year after the first day of the franchise tax year, but not including deposit liabilities of banks and other financial institutions as defined by state or federal law.”
§ 40-14 — 41(b)(3), Ala.Code 1975 (emphasis added). In a statement issued by the Accounting Principles Board of the American Institute of Certified Public Accountants, (AICPA), the board defined GAAP as follows:
“Generally accepted accounting principles incorporate the consensus at a particular time as to which economic resources and obligations should be recorded as assets and liabilities by financial accounting, which changes in assets should be recorded, when these changes should be recorded, how the assets and liabilities and changes in them should be measured, what information should be disclosed and how it should be disclosed, and which financial statements should be prepared.
“Generally accepted accounting principles therefore is a technical term in financial accounting. Generally accepted accounting principles encompass the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time. The standard of ‘generally accepted accounting principles’ includes not only broad guidelines of general application, but also detailed practices and procedures.”
Accounting Principles Board Statement No. 4, “Basic Concepts and Accounting Principles Underlying Financial Statements of Business Enterprises” (October 1970).
For franchise tax purposes, the statute provides that a foreign corporation’s capital “shall equal the aggregate net amount of the following items determined in accordance with Generally Accepted Accounting Principles appropriate in the particular case.” § 40-14-41(b) (emphasis added). The statute then goes on to list “bonds, notes, debentures, or other evidences of indebtedness” as items that are to be considered in calculating the net amount of capital. § 40-14-41(b)(3). Both MCBI and the Revenue Department agree that under GAAP, the debt, i.e., the lease, is extinguished for financial reporting purposes. Because the debt has been extinguished, it cannot be evidence of indebtedness.
We have studied the materials provided to this court by the parties concerning GAAP and we can find no accounting principle or legal authority that would require MCBI to include the lease as capital under § 40-14-41(b)(3). Because a lease is not specified as capital under § 40-14-41(b)(3), and because the lease in this ease cannot be evidence of *13 indebtedness, the lease does not constitute an item of capital within the meaning of § 40-14-41(b)(3). Therefore, the trial court erred in holding that the lease does constitute capital, and the Revenue Department was not entitled to a judgment as a matter of law.
The trial court erred in entering a summary judgment in favor of the Revenue Department on Issue Three. Therefore, the judgment is reversed and this cause is remanded to the circuit court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.